IN THE DISTRICT COURT, DOUGLAS COUNTY, NEBRASKA

Bayinnah Harrison, Individually, and as next friend of & Conservator
for Amunique Harrison a Minor

vs.

Board of Regents of the University of Nebraska, Childrens Hospital,
Amy Lacroix, M.D., John W. Schmidt, M.D., Bradley Meyer, D.O., Travis
Stephensen, M.D., Daniel Faber, M.D., Edward Truemper, M.D., Chad
Branecki, M.D.,

| SUMMONS BY CERTIFIED MAIL | DOC. 1074 NO. 203 |
| --- | --- |

STATE OF NEBRASKA  )
COUNTY OF DOUGLAS  )

This is to notify Travis Stephensen, M.D.,

(Impleaded with others)

Defendant that you have been sued by Bayinnah Harrison, Individually
And as next friend of &
Conservator for Amunique Harrison
A Minor

Plaintiff in the District Court of said County, and that in order to
defend the lawsuit you must file an appropriate written response in
the Office of the Clerk of said Court within thirty days after service
of Summons and Complaint in answer to the Complaint said Plaintiff
filed against you or such Complaint will be taken as true and judgment
rendered accordingly for the relief demanded in the attached
Complaint.

RETURN of this Summons is due within ten days after return of the
signed receipt.

WITNESS my signature and the Seal of said Court at Omaha
and issued this 7th day of August, 2007.

JOHN M. FRIEND, CLERK

BY: _____
Deputy

ATTORNEY FOR PLAINTIFF:
NAME:     Gregory Garland
ADDRESS:  11516 Nicholas Street #205
          Farmers National Building
          Omaha, NE 68154
PHONE:    (402) 330-7000

Exhibit A

*JOHN M. FRIEND*
*AUG = 7 2007*

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

BAYINNAH HARRISON,                         DOC. 1074 NO. 203

INDIVIDUALLY, AND
AS NEXT FRIEND OF &
CONSERVATOR FOR,
AMUNIQUE HARRISON,
A MINOR,

PLAINTIFF,

V.

BOARD OF REGENTS OF THE                    COMPLAINT
UNIVERSITY OF NEBRASKA,
CHILDRENS HOSPITAL,
AMY LACROIX, M.D.,
JOHN W. SCHMIDT, M.D. *(Resident)*
BRADLEY MEYER, D.O. *(Resident)*
TRAVIS STEPHENSEN, M.D.,
DANIEL FABER, M.D.,
EDWARD TRUEMPER, M.D.,              Assigned to Judge *Hartigan JR*
CHAD BRANECKI, M.D.,

DEFENDANTS.

JURISDICTION

1.  This is a medical malpractice claim arising from an incident that

    occurred in Omaha, Douglas County, Nebraska, on August 14-16,

    2005.

PARTIES

2.  Plaintiff Bayinnah Harrison is:

    A.  A resident of Omaha, Douglas County, Nebraska.

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

      B. Parent and legal guardian of Amunique Harrison, a minor:

         1. D.O.B. June 22, 2002.

         2. Resides with her mother.

      C. Bayinnah is the conservator of the financial affairs of Amunique.

         1. On July 10, 2007, she was appointed by the Nebraska
County Court for Douglas County, Probate NO. PRO7-855.

3. Defendant Board of Regents of the University of Nebraska:

      A. Is an agency of the State of Nebraska.

      B. Operates the University of Nebraska Medical Center in Omaha,
Douglas County, Nebraska.

      C. Employed all of the other defendants on August 14-16, 2005.

4. Defendant Amy Lacroix, M.D., on August 14-16, 2005, was:

      A. A physician licensed to practice medicine in Nebraska.

      B. On staff at Childrens Hospital.

      C. Employed by the University of Nebraska Medical Center.

5. Defendant Brad Meyer, D.O., on August 14-16, 2005, was:

      A. A physician licensed to practice medicine in Nebraska.

      B. On staff at Childrens Hospital.

      C. Employed by the University of Nebraska Medical Center.

6. Defendant John W. Schmidt, M.D., on August 14-16, 2005, was:

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

    A. A physician licensed to practice medicine in Nebraska.

    B. On staff at Childrens Hospital.

    C. Employed by the University of Nebraska Medical Center.

7. Defendant Travis Stephensen, M.D., on August 14-16, 2005, was:

    A. A physician licensed to practice medicine in Nebraska.

    B. On staff at Childrens Hospital.

    C. Employed by the University of Nebraska Medical Center.

8. Defendant Edward Truemper, M.D., on August 14-16, 2005, was:

    A. A physician licensed to practice medicine in Nebraska.

    B. On staff at Childrens Hospital.

    C. Employed by the University of Nebraska Medical Center.

9. Defendant Chad Branecki, M.D., on August 14-16, 2005, was:

    A. A physician licensed to practice medicine in Nebraska.

    B. On staff at Childrens Hospital.

    C. Employed by the University of Nebraska Medical Center.

INCIDENT

10. On August 14-16, 2005, the following occurred at Childrens Hospital in Omaha, Douglas County, Nebraska:

    A. Amunique Harrison was admitted to Childrens Hospital on Sunday, August 14, 2005:

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

1. After a two-day illness, at approximately 01:30 A.M., Amunique Harrison was transferred from the University of Nebraska Medical Center to Childrens Hospital.

2. Defendant Schmidt, a resident, handled the admission history and physical, he noted:

   a. Sodium level of 143 (within normal limits) from UNMC.

   b. Lung sounds clear to auscultation bilaterally.

   c. Neuro checks Appropriate, CN 2-12 grossly intact (within normal limits).

3. Defendant Schmidt admitted Amunique into room 608 at Childrens Hospital with a diagnosis of dehydration and hematoemesis (bloody emesis) under Defendant Lacroix's service.

   a. Among other things, he wrote orders for:

      1. Normal saline bolus of IV fluids to be given over 1 hour at 03:30 A.M.

      2. Dextrose 5% with one half normal saline to run at 90cc/hour.

         i. Potassium chloride, 20 meq to be added after first void.

4

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

              1. There is no evidence of hypokalemia (low potassium).

           3. Heme test to check for blood in the emesis.

               i. No other lab tests were ordered at this time.

        b. Defendant Lacroix, pediatric attending and associate professor at the University of Nebraska, wrote her first progress note and M.D. orders at 09:20 A.M. She orders among other things:

           1. CBC with differential and C reactive protein test.

               i. She *does not* order a chemistry panel.

           2. Abdominal and Chest X-Rays.

B. Childrens Hospital August 15, 2005:

      1. Defendant Meyer, a resident, conducts rounds around 07:00 A.M. and writes in his progress note:

         a. Fluid intake 2228.

         b. Fluid output 1267.

         c. Lungs clear to auscultation.

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

       d.  Diagnosis of hematoemesis, dehydration and

           pyelogram (to check the kidneys).

       e.  Plan to continue IV Fluids.

       f.  <u>Plan to repeat chemistry 8 (electrolytes) and</u>

           <u>kidney function tests.</u>

           i.  He does not repeat the chemistry 8 on

               August 15, 2005.

2.  Defendant Lacroix signs off on Defendant Meyer's

    progress note.

3.  Defendant Lacroix conducts rounds at 07:00 A.M. and

    writes in her progress note:

       a.  Fluid intake 2228.

       b.  Fluid output 1267.

       c.  Plan to continue IV fluids.

       d.  Plan to continue antibiotics.

       e.  Await cultures.

4.  Defendant Lacroix does not check Amunique's sodium

    level on August 15, 2005.

5.  Defendant Schmidt does not check Amunique's

    sodium level on August 15, 2005.

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

6. No physician checks Amunique's sodium level on August 15, 2005.

7. Amunique develops symptoms of meningitis around 08:40 A.M.

8. An unsuccessful lumbar puncture (LP) is attempted three times at 11:20 A.M. on August 15, 2005.

   a. Consult is written for LP under anesthesia.

      i. There are no notes from that procedure or what type of anesthesia was used to conduct the LP.

9. Defendant Lacroix writes two more progress notes, one at 17:15 P.M. and one at 19:50 P.M.

   a. There is no further mention of chemistry panels to check Amunique's sodium level.

   b. Defendant Lacroix suspects viral meningitis and continues IV antibiotics and close monitoring.

      i. The details of the suspected diagnosis of unknown viral meningitis are not adequately documented.

7

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

10.   No brain imaging is conducted on August 15, 2005,
despite the fact that lumbar puncture was done with
the working diagnosis of viral meningitis.

11.   Despite the low urine output, vomiting and fever, no
electrolytes are ordered on August 15, 2005, even
though defendants Meyer and Lacroix mentioned
ordering them in the plan section of their progress note
written on August 15, 2005.

C.  Childrens Hospital August 16, 2005:

1.  Sometime in the morning Defendant Meyer orders
continuous pulse oximetry to monitor Amunique's
oxygenation.

a.  The reason for this is not documented.

2.  At 07:05 A.M., Amunique is described as "alert" with
eyes open, but not answering questions or following
commands which is a turn for the worse.

3.  Since there is no documentation by the physicians
between 07:05 A.M. and 10:35 A.M, Amunique's
condition is unknown at this time.

4.  At 10:20 A.M., Defendant Meyer orders:

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

    a. A STAT chemistry panel (electrolytes and kidney function).

    b. Dexamethasone (an anti-inflammatory).

    c. Continuous pulse oximetry (to monitor oxygenation).

    d. He does not write a progress note and does not explain his concerns.

5. At 10:35 A.M., per Defendant Lacroix's progress note, Amunique "looks sick" and is developing respiratory problems (mild stridor and grunts on auscultation).

6. At 10:55 A.M., Amunique's sodium comes back critically low at 123 (low normal is 135).

    a. Amunique is hyponatremic.

    b. Hyponatremia among other things can lead to pulmonary edema and brain swelling.

        i. If left untreated, pulmonary edema can lead to respiratory arrest.

        ii. If left untreated, brain swelling can lead to seizures and permanent brain injury.

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

7. At 11:53 A.M., an hour after the STAT result comes
   back, Defendant Stephensen notifies Defendant
   Lacroix of the critically low sodium level.

   a. There is no written explanation why it took an
      hour to notify Dr. Lacroix of this critical lab
      value.

   b. They write orders to:

      i.   Decrease the IV to 43 cc/hour STAT.

      ii.  Check urine chemistry tests.

      iii. Recheck chemistry panel at 16:00 P.M.,
           five hours after the critically low sodium
           level is run by the lab at 10:55 A.M.

8. At 12:05 P.M., Defendant Stephensen writes orders to
   restrict oral fluids until results of the repeat chemistry
   panel are known, which he ordered to be done at
   16:00 P.M.

9. At 13:50 P.M., Defendant John Schmidt is called to
   Amunique's bedside due to seizure-like activity.  He
   notes:

   a. Amunique is unresponsive.

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

    b. Her oxygenation is critically low (mid-70's) with copious amounts of oral secretions.

        i. It is unknown how long her oxygenation had been in the mid-seventies.

    c. Breath sounds are diffuse with crackles.

10. At 13:50 P.M., Defendant Stephensen simultaneously changes the treatment course and orders:

    a. A STAT venous blood gas to check Amunique's oxygenation level.

    b. A new chemistry panel to recheck the sodium level. ·

        i. The sodium is now 122, a point lower than it was three hours before.

        ii. O2 saturation is 63, low normal is 80.

        iii. pO2 is 33, low normal is 85.

11. At 13:55 P.M., Defendant John Schmidt orders 3% sodium chloride bolus, three hours after the lab reports Amunique's sodium level is 123.

12. Amunique is transferred to the pediatric intensive care unit shortly after 13:55 P.M.

11

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

13. Shortly after she arrives in the PICU she experiences cardiac arrest.

    a. The duration of resuscitation is 8-10 minutes.

        i. Due to pulmonary edema, three attempts were made to intubate Amunique before they placed the endotracheal tube.

14. At 14:50 P.M., chest x-ray not only confirms the development of pulmonary edema, but also the misplacement of the endotracheal tube.

    a. The tip is in the right lung.

        i. As a consequence, only the right lung is being ventilated.

15. At 15:15 P.M., chest x-ray still describes the tip of the endotracheal tube as being too low (in the right lung).

    a. Atelectasis (collapse) of the left lung has now developed.

16. At 15:20 P.M., Amunique is severely hypoxic.

    a. Blood oxygen concentration is 67 mmHg (low normal is 85).

    b. Blood carbon dioxide is 52 (high normal is 47).

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

17. At 15:58 P.M., another chest x-ray again describes the endotracheal tube as being (in the right lung).

    a. Pneumothorax, which is free air in the chest, and Atelectasis have now developed on the right side.

    b. At around 16:00, both lungs are collapsed.

18. At 16:45 P.M., another chest x-ray again describes the tip of the endotracheal tube as being low.

19. At 04:31 A.M. on August 17, 2005, the tip of the endotracheal tube is past the thoracic inlet.

20. At 20:05 P.M., *almost thirty hours later*, the tip of the endotracheal tube is finally in the correct position.

21. Pediatric neurologist states in his progress note that Amunique experienced hyponatremic seizures characterized by tonic stiffening and eye deviation.

D. As a result of the hyponatremia, hypoxia, and SIADH, Amunique is:

    1. Legally blind.

    2. Quadriplegic.

    3. Unable to feed herself.

    4. Wheelchair bound.

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

 

 

5.  100% disabled.

NEGLIGENCE

11. Defendant Childrens Hospital failed to possess and use the care, skill,

and knowledge, ordinarily possessed and used under like

circumstances by other hospitals engaged in similar practice on

August 14-16, 2005, by its physicians and nursing staff:

A.  Failing to appropriately monitor the condition of Plaintiff,

Amunique Harrison, on August 14-16, 2005.

B.  Failing to appropriately monitor the electrolytes of a fluid

compromised pediatric patient experiencing severe

gastrointestinal upset and hematoemesis on August 14-15,

2005.

C.  Failing to appropriately monitor the sodium level of a dehydrated

pediatric patient on August 14-15, 2005.

D.  Failing to appropriately monitor the sodium level of a suspected

meningitis pediatric patient on August 15, 2005.

E.  Failing to act on neurological changes that occurred at 07:05

A.M. on August 16, 2005.

F.  Failing to diagnose SIADH after neurological changes occurred

at 07:05 A.M on August 16, 2005.

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

G. Failing to document Amunique's condition between 07:05 A.M.
   and 10:35 A.M. on August 16, 2005.

H. Failing to appropriately treat evidence of severe hyponatremia
   that was discovered at 10:55 A.M. on August 16, 2005.

I. Failing to monitor pulse oximetry that was ordered at 10:20 A.M.
   on August 16, 2005.

J. Failing to infuse 3% hypertonic normal saline appropriately at
   13:50 P.M. on August 16, 2005.

K. Failing to intubate Amunique when oxygenation saturation was
   in the mid-seventies.

L. Failing to appropriately place an endotracheal tube in a timely
   manner once Amunique was taken to the PICU.

M. Failing to correct the placement of the endotracheal tube at:

   1. 14:50 P.M. on August 16, 2005.

   2. 15:15 P.M. on August 16, 2005.

   3. 15:58 P.M. on August 16, 2005.

   4. 16:45 P.M. on August 16, 2005.

   5. 04:45 A.M. on August 17, 2005.

12. Defendants Lacroix, Meyer, Stephensen and Schmidt failed to

possess and use the care, skill, and knowledge, ordinarily possessed

and used under like circumstances by other physicians engaged in

15

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

similar practice on August 14-16, 2005, by:

    A.  Failing to appropriately monitor the condition of Plaintiff, Amunique Harrison, on August 14-16, 2005.

    B.  Failing to appropriately monitor the electrolytes of a fluid compromised pediatric patient experiencing severe gastrointestinal upset and hematoemesis on August 14-15, 2005.

    C.  Failing to monitor the sodium level of a dehydrated pediatric patient on August 14-15, 2005.

    D.  Failing to monitor the sodium level of a suspected meningitis pediatric patient on August 15, 2005.

    E.  Failing to act on neurological changes that occurred at 07:05 A.M. on August 16, 2005.

    F.  Failing to diagnose SIADH after neurological changes occurred at 07:05 A.M on August 16, 2005.

    G.  Failing to document Amunique's condition between 07:05 A.M. and 10:35 A.M. on August 16, 2005.

    H.  Failing to appropriately treat evidence of severe hyponatremia that was discovered at 10:55 A.M. on August 16, 2005.

    I.  Failing to monitor pulse oximetry that was ordered at 10:20 A.M. on August 16, 2005.

16

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

    J. Failing to infuse 3% hypertonic normal saline appropriately at
       13:50 P.M. on August 16, 2005.

    K. Failing to intubate Amunique when oxygenation saturation was
       in the mid-seventies.

13. Defendants Truemper and Branecki failed to possess and use the
care, skill, and knowledge, ordinarily possessed and used under like
circumstances by other physicians engaged in similar practice on
August 14-16, 2005, by:

    A. Failing to place an endotracheal tube in a timely manner once
       Amunique was taken to the PICU.

    B. Failing to appropriately place the endotracheal tube once they
       intubated Amunique.

    C. Failing to correct the misplacement of the endotracheal tube at:

       1. 14:50 P.M. on August 16, 2005.

       2. 15:15 P.M. on August 16, 2005.

       3. 15:58 P.M. on August 16, 2005.

       4. 16:45 P.M. on August 16, 2005.

CAUSATION/DAMAGES

14. Those joint and several failures by all defendants, directly and
proximately, caused permanent injuries to Plaintiff's child and ward,
Amunique Harrison.

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

    A. Hyponatremia.

    B. SIADH.

    C. Seizures.

    D. Hypoxia.

    E. Hypoxic Ischemia Encephalopathy.

    F. Blindness.

    G. Quadriplegia.

## SPECIAL DAMAGES

15. Those injuries caused Plaintiff, Bayinnah Harrison, to incur special

damages to date:

    A. Medical Services (through 12/13/06):  $ unknown

    B. Rehabilitation Expenses:            $ unknown

    C. Travel Expenses:               $ unknown

    D. Lost Income:                 $unknown

16. Those injuries will cause Plaintiff's child and ward, Amunique Harrison,

to incur future damages:

    A. Equipment               $ unknown

    B. Lost Income              $ unknown

    C. Housing Modifications     $ unknown

## AGENCY

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

17. On August 14-16, 2005, Defendants Lacroix, Meyer, Stephensen,

Faber, Schmidt, Truemper, and Branecki were:

    A. Agents of the Defendant Board of Regents of the University of

       Nebraska.

    B. Acting in the scope of such agency when treating Amunique

       Harrison at Children's Hospital.

NEBRASKA HOSPITAL-MEDICAL LIABILITY ACT

18. From August 14-16, 2005, each Defendant was qualified under the

Nebraska Hospital-Medical Liability Act; Nebraska Revised Statutes

Section 44-2801.

    A. Plaintiff waives her right to a panel review under Section 44-

       2840 (4).

    B. This complaint is filed pursuant to Section 44-2822.

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

## FIRST CAUSE OF ACTION

19. By this reference, plaintiffs incorporate paragraphs 1 through 18 of this

petition.

WHEREFORE, we seek a judgment for reasonable damages, plus costs.

## SECOND CAUSE OF ACTION

20. By this reference, plaintiff incorporates paragraphs 1 through 18 of this

complaint.

21. Because of defendants' joint and several negligence, Plaintiff

Bayinnah Harrison and her next of kin have sustained losses of

services and comfort.

WHEREFORE, we seek a judgment for reasonable damages, plus costs.

ATTORNEY FOR THE PLAINTIFFS

Gregory Garland [NSBA #16248]
GARLAND LAW PC
11516 Nicholas St., #205
Farmers National Building
Omaha NE  68154
402.330.7000
Fax 330.7058
gregorygarland@garlandlawpc.com

Harrison v. Board of Regents of the University of Nebraska et. al.
Complaint

## CERTIFICATE OF SERVICE

On August 07, 2007, a copy of this was mailed via certified mail to:

L. Tim Wagner, Director
Nebraska Department of Insurance
941 "O" Street, #400
Lincoln, NE 68508